O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO TRINIDAD,<br><br>          Petitioner,<br><br>     v.<br><br>UNITED STATES OF<br>AMERICA, JEH JOHNSON,<br>SECRETARY OF HOMELAND<br>SECURITY,<br><br>          Respondents. | Case No. EDCV 13-01013-VAP (ANx)<br><br>**ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 19); GRANTING RESPONDENTS' MOTION FOR SUMMARY JUDGMENT (DOC. NO. 27); AND DENYING THE PETITION FOR REVIEW (DOC. NO. 1)**<br><br>**[Motions filed on April 10, 2014 & June 10, 2014]** |

     Petitioner Fernando Trinidad, appearing pro se, seeks de novo review of the decision to deny him United States citizenship.  See 8 U.S.C. § 1421(c) (granting district courts the authority to conduct de novo review of denials of applications for naturalization).  In light of the undisputed facts that continue to render Trinidad ineligible for citizenship, the Court GRANTS the Motion for Summary Judgment (Doc. No. 27) filed by Respondent the United States of America (and by the officials named

1  in Trinidad's Petition, hereafter collectively the

2  "Government"),[1] DENIES the Motion for Summary Judgment

3  (Doc. No. 19) filed by Trinidad,[2] and DENIES Trinidad's

4  Petition (Doc. No. 1).

5

6  **I. BACKGROUND**

7  On March 24, 1997, Trinidad, a citizen of the

8  Philippines, applied for United States citizenship.  (Ex.

9  A to Decl. of Marianne Parada (Doc. No. 27-5) at 39.)  An

10 officer of the predecessor of what is now United States

11 Citizenship and Immigration Services ("USCIS")

12 interviewed Trinidad on March 3, 1998, at which time

13 Trinidad was deemed not to possess the "good moral

14 character" necessary to become a United States citizen.

15 (Id.)

16 Specifically, USCIS noted in an August 26, 2011

17 letter to Trinidad, on February 7, 1995, a San Bernardino

18 County (California) court convicted Trinidad of

19 committing lewd and lascivious acts on a child.  (Id. at

20 40.)  Further, USCIS wrote, Trinidad had another state

21 court conviction, on June 6, 2003, for assault with a

22 deadly weapon by means likely to cause great bodily harm.

23 (Id.)  USCIS noted that Trinidad's first conviction

24 _____

25 [1] Pursuant to Federal Rule of Civil Procedure 25(d),
   Secretary of Homeland Security Jeh Johnson's name is
26 substituted automatically for his predecessor's.

27 [2] Trinidad styled this document "Briefing Schedule
   for Motions for Summary Judgment," but it appears to be a
28 motion.

resulted in a 312-day prison sentence, and his second in an eight year sentence (id.), thereby rendering him statutorily ineligible to demonstrate good moral character.  See 8 C.F.R. § 316.10(b)(2)(ii) ("An applicant shall be found to lack good moral character if . . . the applicant . . . [c]ommitted two or more offenses for which the applicant was convicted and the aggregate sentence actually imposed was five years or more.").  Moreover, USCIS classed both of Trinidad's convictions as aggravated felonies under 8 U.S.C. § 1101(a)(43) (Ex. A to Parada Decl. at 40), also rendering Trinidad ineligible to naturalize.  See 8 U.S.C. § 1101(f)(8) ("No person shall be regarded as . . . a person of good moral character who . . . is, or was . . . at any time . . . convicted for an aggravated felony . . . ."); 8 C.F.R. § 316.10(b)(1)(ii) ("An applicant shall be found to lack good moral character, if the applicant has been . . . convicted of an aggravated felony as defined in [8 U.S.C. § 1101](a)(43) . . . .").  Trinidad sought a hearing to review the denial.  (Ex. B to Decl. of Marianne Parada (Doc. No. 27-6) at 41.)

On February 11, 2013, USCIS sent Trinidad a letter reaffirming its decision, and informing him that its decision "constitutes a final administrative denial of [his] naturalization applciation."  (Id. at 42.)

Meanwhile, the Government had been attempting to remove Trinidad from the United States.  It served a

notice to appear for immigration proceedings on Trinidad
on April 23, 1999, but those proceedings terminated in
June because Trinidad was apparently then an inpatient in
a psychiatric facility.  (Ex. 3 to Decl. of Marianne
Parada (Doc. No. 27-4) at 17.)  Proceedings against
Trinidad later recommenced, and an immigration court
ordered him removed to the Philippines on January 4,
2000.  (Id. at 18.)

       After years of litigation, owing chiefly to due
process concerns raised by Trinidad's serious mental
illness (see id.; see also Ex. C. to Decl. of Marianne
Parada (Doc. No. 27-7) at 44-71), an immigration court
found Trinidad removable for having been convicted of an
aggravated felony, 8 U.S.C. § 1227(a)(2)(A)(iii), and for
having been convicted of two crimes involving moral
turpitude, 8 U.S.C. § 1227(a)(2)(A)(I).  The court
concluded, however, that "it is more likely than not
that, due to his mental health condition, [Trinidad] will
be imprisoned if he is returned to the Philippines, and
he will be subjected to torture by detention officials."
(Ex. C to Parada Decl. at 68.)  Thus, on April 11, 2012,
the immigration court ordered Trinidad removed to the
Philippines, but deferred his removal pursuant to the
Convention Against Torture – which, in line with the
court's findings, would have forbidden Trinidad's
deportation to the Philippines.  (Id. at 71.)  The
court's order was appealable to the Board of Immigration

1 Appeals, but the Government represents that no appeal was
2 taken by either party.  (Decl. of Marianne Parada (Doc.
3 No. 27-1) ¶ 6.)  Trinidad's removal order is therefore
4 final.  8 U.S.C. § 1101(a)(47)(B)(ii); 8 C.F.R. §
5 1003.39.

6      On June 6, 2013, Trinidad filed the instant petition.
7 In it, he does not seek review of his removal order,
8 which is, in any event, beyond the jurisdiction of this
9 Court.  See 8 U.S.C. § 1252(a)(5) ("[A] petition for
10 review filed with an appropriate court of appeals in
11 accordance with this section shall be the sole and
12 exclusive means for judicial review of an order of
13 removal . . . .").  Rather, Trinidad seeks only review of
14 USCIS's decision to deny him United States citizenship.
15 The Court conducts that review under the following
16 standard.

17

18                    **II. LEGAL STANDARD**

19      Under 8 U.S.C. § 1421(c), a district court may
20 conduct a de novo review of a denied application for
21 naturalization, making its own findings of fact and
22 conclusions of law.  A court may order a person
23 naturalized if the person meets various statutory
24 criteria, including those set forth 8 U.S.C. § 1427.
25 United States v. Hovsepian, 359 F.3d 1144, 1165 (9th Cir.
26 2004) (en banc).  The statutory criteria must be applied
27 strictly, as "Congress alone has the constitutional
28

1  authority to prescribe rules for naturalization, and the

2  courts' task is to assure compliance with the particular

3  prerequisites to the acquisition of United States

4  citizenship . . . to safeguard the integrity of this

5  'priceless treasure.'"  <u>Fedorekno v. United States</u>, 449

6  U.S. 490, 506-07 (1981) (quoting <u>Johnson v. Eisentrager</u>,

7  339 U.S. 763, 791 (1950) (Black, J., dissenting)).

8      The burden is ultimately on an applicant to show that

9  he meets all of the statutory criteria.  <u>See</u> <u>Berenyi v.</u>

10  <u>Dist. Dir., Immigration & Naturalization Serv.</u>, 385 U.S.

11  630, 637 (1967) ("[I]t has been universally accepted that

12  the burden is on the alien applicant to show his

13  eligibility for citizenship in every respect.").  Any

14  doubts about an applicant's eligibility are resolved

15  against the applicant.  <u>Id.</u>

16

17                    **III. DISCUSSION**

18      Mindful of Trinidad's efforts to overcome his mental

19  illness, and his attempts to clear his record of his

20  felony convictions, the Court nevertheless must apply the

21  law – and do so with the utmost punctiliousness when it

22  comes to conferring United States citizenship on an

23  applicant.  <u>Fedorenko</u>, 449 U.S. at 506-07.

24      In this case, that mandate requires the Court to

25  enter summary judgment in favor of the Government, and

26  against Trinidad, because there is at least one

27  undisputed barrier to Trinidad's naturalization.  <u>See</u>

28

                          6

1  Fed. R. Civ. P. 56(a) ("The court shall grant summary
2  judgment if the movant shows that there is no genuine
3  dispute as to any material fact and the movant is
4  entitled to judgment as a matter of law.").
5  Specifically, the Court is forbidden to naturalize anyone
6  "against whom there is an outstanding . . . final finding
7  of deportability," 8 U.S.C. § 1429, and it is undisputed
8  that an immigration court entered such a finding against
9  Trinidad (see Ex. C to Parada Decl. at 71; Parada Decl. ¶
10  6).  See De Lara Bellajaro v. Schiltgen, 378 F.3d 1042,
11  1044–46 (9th Cir. 2004) (explaining the purpose of
12  section 1429 is preventing a race between the Government
13  to remove an alien, and the alien to naturalize);
14  Perdomo-Padilla v. Ashcroft, 333 F.3d 964, 970 (9th Cir.
15  2003) (noting the "natural reading" of section 1429 "is
16  that . . . final removal orders are to take precedence
17  over naturalization applications").  It is of no moment
18  that the immigration court simultaneously deferred
19  Trinidad's removal; indeed, that the immigration court
20  could order Trinidad's removal deferred means that
21  Trinidad was ordered removed in the first place.  See
22  Alali-Amin v. Mukasey, 523 F.3d 1039, 1041–42 (9th Cir.
23  2008) (holding that deferral of removal under the
24  Convention Against Torture does not effect the finality
25  of the underlying, deferred order of removal).
26      The Government offers another reason why it should
27  prevail at summary judgment:  Trinidad is statutorily
28

1  ineligible to naturalize because he was convicted of
2  aggravated felonies.  (Gov't's Mot. for Summ. J. at 6.)
3  As the finality of an order of removal against Trinidad
4  is dispositive of his Petition, the Court need not and
5  does not reach the Government's additional argument.
6
7                      **IV. CONCLUSION**
8       The Court is precluded by law from granting Trinidad
9  United States citizenship, because he is the subject of a
10 final order of removal from the United States.
11 Accordingly, the Court GRANTS the Government's Motion for
12 Summary Judgment, DENIES Trinidad's Motion for Summary
13 Judgment, and DENIES Trinidad's Petition.
14
15
16
17 Dated:  August 15, 2014          _____
                                      VIRGINIA A. PHILLIPS
18                                  United States District Judge
19
20
21
22
23
24
25
26
27
28